UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WALTER AARON HAMILTON, | § | NO. 5:15-CV-572-DAE |
| | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT

Before the Court is Petitioner's Motion to Alter or Amend Judgment. (Dkt. # 42.)  Pursuant to Local Rule 7(h), the Court finds this matter suitable for disposition without a hearing.  After careful consideration of the motion and memorandum in support, the Court, for the reasons that follow, **DENIES** Petitioner's Motion to Alter or Amend Judgment.

BACKGROUND

On May 11, 2006, a grand jury indicted Petitioner in the 226th Judicial District Court of Bexar County, Texas in cause number 2006-CR-3927 for aggravated sexual assault, aggravated robbery, and aggravated kidnapping that occurred on December 14, 2005.  (Dkt. # 13-17 at 8−11.)  Counts 1 through 4 of the indictment were for various forms of aggravated sexual assault of a woman

1

named R.C.  (Id.)  Count 5 charged Petitioner with aggravated robbery and Count 6 with aggravated kidnapping.  (Id.)   On February 28, 2008, a jury found Petitioner guilty of all counts.  (Dkt. # 13-18 at 96−103.)  On March 3, 2008, the Texas trial court sentenced him to a 60-year term of confinement on Counts 1 and 4, 30-year terms on Counts 2, 3, and 4, and a 10-year term on Count 5, with each term served concurrently.  (Id. at 112−17.)

On direct appeal, the Texas Court of Appeals affirmed Petitioner's convictions.  Hamilton v. State, 300 S.W.3d 14 (Tex. App. 2009).  The Texas Court of Criminal Appeals refused Petitioner's subsequent petition for discretionary review.  Hamilton v. State, No. PD-1562-90, 2010 WL 724449, at * 1 (Tex. Crim. App. Mar. 3, 2010).   On May 23, 2011, the U.S. Supreme Court denied his petition for a writ of certiorari.  Hamilton v. Texas, 131 S. Ct. 2905 (2011).  Petitioner filed a state application for habeas relief, and on June 10, 2015, the Texas Court of Criminal Appeals granted in part and denied in part by vacating Count 2 for aggravated sexual assault, finding that this conviction violated the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. Ex parte Hamilton, No. WR-80,458-01, 2015 WL 1341467, at * 1 (Tex. Crim. App. 2015.)  On July 9, 2015, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Dkt. # 1.)

On March 2, 2016, the Court issued an order that adopted a Report and Recommendation from U.S. Magistrate Judge John Primomo.  (Dkt. # 38.) The Court's March 2, 2016 Order ("the Order") denied Petitioner's petition for a writ of habeas corpus on fifteen grounds and denied him a certificate of appealability.  (Id.)  On March 16, 2016, Petitioner filed a Notice of Appeal in the United States Court of Appeals for the Fifth Circuit.[1]  (Dkt. # 40.)  On March 30, 2016, Petitioner timely filed a Motion to Alter or Amend Judgment of the Court's Order.[2]  (Dkt. # 42.)

## LEGAL STANDARD

"A Rule 59(e) motion calls into question the correctness of a judgment."  Templet v. Hydrochem, Inc., 367 F.3d 473, 478 (5th Cir. 2004).  "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'"  Schiller v. Physicians Resource Grp. Inc., 342 F.3d 563, 567 (5th Cir. 2003) (quoting Rosenzweig v. Azurix Corp., 332 F.3d 854,

---

[1] On April 21, 2016, the United States Court of Appeals for the Fifth Circuit dismissed Petitioner's appeal for want of prosecution. (Dkt. # 43.)

[2] Even though Petitioner filed a Notice of Appeal, which normally divests a district court of jurisdiction, Petitioner's timely filing of a Motion to Alter or Amend Judgment pursuant to Federal Rule or Civil Procedure 59 causes a district court to retain its jurisdiction over the matter.  Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58−59 (1982); Fed. R. App. P. 4(a)(4).

863−64 (5th Cir. 2003)).  "Under Rule 59(e), amending a judgment is appropriate

(1) where there has been an intervening change in the controlling law; (2) where

the movant presents newly discovered evidence that was previously unavailable; or

(3) to correct a manifest error of law or fact."  <u>Demahy v. Scwarz Pharma, Inc.</u>,

702 F.3d 177, 182 (5th Cir. 2012).  Rule 59(e), however, is "not the proper vehicle

for rehashing evidence, legal theories, or arguments that could have been offered

or raised before entry of judgment," <u>Templet</u>, 367 F.3d at 478, and it "should not

be used to . . . re-urge matters that have already been advanced by a party."

<u>Nationalist Movement v. Town of Jena</u>, 321 F. App'x 359, 364 (5th Cir. 2009).

Reconsideration of a previous order is "an extraordinary remedy that should be

used sparingly."  <u>Id.</u>

DISCUSSION

Petitioner moves the Court to alter or amend its final judgment on five

of the fifteen grounds upon which Petitioner originally asserted as bases for relief

in his petition for a writ of habeas corpus.  (Dkt.  # 42.)

I.    <u>Alteration of Physical Evidence</u>

Petitioner first argues that the prosecutor altered the state's exhibit

number 72, which was a blue jacket "identified as having a Builders First Source"

marking on it.  ("Feb. 28, 2008 Trial Tr.," Dkt. # 14-27 at 72:22−75:5) Petitioner

seems to assert that the prosecutor pulled this blue jacket out of the evidence bag,

4

held it up in front of the jury, and called it a "Blue Ford Jacket," even though it was a Builders First Source jacket.

This is the exact same argument Petitioner raised in his petition for a writ of habeas corpus and the Court rejected it in its Order. Rule 59(e) is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment," Templet, 367 F.3d at 478, and it "should not be used to . . . re-urge matters that have already been advanced by a party." Nationalist Movement, 321 F. App'x at 364. As this Court noted in the Order, "the state habeas court found that the prosecutor did not fabricate any jacket evidence." (Dkt. # 38 at 10.) Such a factual finding "shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and only rebutted upon a showing of clear and convincing evidence. Again, Petitioner re-urges the Court to find that the prosecutor fabricated the blue jacket because the blue jacket shown to the jury was not the same kind of jacket the rape victim described as worn by the perpetrator during her rape. Petitioner confuses the issues. The blue jacket shown to the jury was not shown as probative evidence that it was the same jacket described by the victim during her rape; the blue jacket shown to the jury was a jacket found on Petitioner's body when police found him unconscious in his vehicle on December 15, 2005, a day after the victim's rape occurred. (Feb. 28, 2008 Trial Tr. at 71:25−72:19.) Further, during its introduction into evidence, Petitioner's defense

counsel expressly agreed on the record that no chain of custody issues existed for the blue jacket.  (Id. at 73:16−74:3.)  Either way, Petitioner raised this argument in his petition for a writ of habeas corpus and failed to come forth with evidence to demonstrate by a clear and convincing standard that the state habeas court erred in its factual determination that the prosecutor did not alter physical evidence. Petitioner presents no new evidence here.  Accordingly, the Court denies relief.

II.   Confrontation

The gravamen of Petitioner's argument is that the Court should have found error in the Texas Court of Appeal's conclusion that a confrontation clause violation was harmless error.  (Dkt. # 42 at 3−4.)  On direct appeal, the Texas Court of Appeals found a confrontation clause violation when Garon Foster testified about a DNA report produced by Erica Graham.  See Hamilton, 300 S.W.3d at 21.  However, the Texas Court of Appeals found the constitutional error to be harmless because the DNA report was cumulative, no other evidence contradicted the evidence of Graham's analysis, and a great amount of other evidence independently supported Petitioner's conviction: the victim identified him based on the hour they spent together prior to the attack, and the victim's credit cards were found in Petitioner's jacket pocket.  Id. at 22.  This Court found Petitioner failed to meet his burden of showing that the Texas Court of Appeal's determination was either "contrary to" Supreme Court precedent or was an

unreasonable application of clearly established law.  28 U.S.C. § 2254(d)(1);

Garcia v. Quarterman, 454 F.3d 441, 445 (5th Cir. 2006).

       In the instant motion to alter the judgment, Petitioner asserts the same
factual arguments as he did in his original petition, but a Rule 59(e) motion is not
the appropriate device to rehash previous legal arguments.  See Templet, 367 F.3d
at 478.  Petitioner contends that it was unreasonable for the Texas Court of
Appeals to conclude that the confrontation clause violation was harmless because
the other evidence, excluding the DNA, was insufficient to prove his guilt beyond
a reasonable doubt.  For example, petitioner asserts that the victim's credit cards
were not found in his jacket, but that instead a Good Samaritan testified she found
the credit cards in a bag in the street.  (Dkt. # 42 at 3−4.)  As petitioner explains,
"[f]or the 100th time; the victim's credit cards were NOT found in Hamilton's
jacket pocket.  All the Court has to do is look at the [t]ranscripts; at the Good
Samaritan's testimony."  (Id. at 4.)  The Court has looked at the transcripts, and
there is no testimony from a Good Samaritan.  However, trial testimony does
unequivocally establish that the victim's credits cards were found in petitioner's
jacket pocket.[3]  On February 28, 2008, at petitioner's jury trial, Sherriff's Deputy
Anita Ramirez testified that during a lawful search of petitioner's vehicle, she

---

[3] Indeed, when the state moved to offer the credit cards into evidence, Petitioner's
attorney expressly stated that he had no objection and agreed that "these are the
items from the interior of the car."  (Feb 28, 2008 Trial Tr. at 74:1−74:3.)

discovered four of the victim's credit cards inside petitioner's jacket pocket.  (Feb.

28, 2008 Trial Tr. at 67:2−75.22.)  Specifically, the Court excerpts the following

from Deputy Ramirez's testimony:

> Q: Now, when you removed those jackets from the vehicle, did you
> do a search of the actual jackets?
>
> A: I did.

(Id. at 72:15−72:17.)

> Q: And what items did you remove from the brown jacket?
>
> A: Is it okay if I refer to my report?
>
> Q: Yes.
>
> A: I recovered several credit cards, four to be exact, four cards.

(Id. at 72:25−73:4.)

> Q: And what is the name on each of those credit cards?
>
> A: Each one of the cards has the name Rosario, with the middle initial
> C, last name Voelker.[4]

(Id. at 75:20−75:22.)

> To obtain relief, Petitioner has the burden of proving that the state

court's determination was either "contrary to" Supreme Court precedent or was an

unreasonable application of clearly established law.  28 U.S.C. § 2254(d)(1); see

---

[4] The victim's last name was Voelker during her first marriage.  After her first
husband passed away, the victim remarried and changed her legal name to Rosario
Voelker Crutchfield.  The victim testified that some of her credit cards identified
her as Rosario Voelker.  (Feb. 28, 2008 Trial Tr. At 8:1−8:17.)

also Garcia v. Quarterman, 454 F.3d 441, 445 (5th Cir. 2006).  Petitioner has met

neither burden.  The Texas Court of Appeals applied the appropriate Supreme

Court harmless error test, and its conclusion of law as applied to the facts was not

unreasonable.  Despite the constitutional error, it was reasonable for the Texas

court to conclude that the error was harmless beyond a reasonable doubt because of

a sufficient quantity of independent bases for a jury to return a verdict of guilty

beyond a reasonable doubt.  Petitioner's argument is not sufficient to demonstrate

that the state court's determination "was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, 103 (2011).

This Court's review is limited to whether the state court's determination was

unreasonable and not whether it was incorrect.  Price v. Vincent, 538 U.S. 634, 641

(2003).

   III.   Double Jeopardy

         The Double Jeopardy Clause of the Fifth Amendment to the United

States Constitution provides that no person shall "be subject for the same offense

to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The Double

Jeopardy Clause "protects against multiple punishments for the same offense."

Brown v. Ohio, 432 U.S. 161, 165 (1977) (quoting North Carolina v. Pearce, 395

U.S. 711, 717 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794

9

(1989)).  The most common question for the Court's consideration when there are

two convictions out of the same incident is whether the two convictions represent

multiple punishments for the same offense.  Generally, the applicable test to

determine whether there are two offenses or only one is whether each provision of

a statutory offense requires proof of an additional fact which the other does not.

See Blockburger v. United States, 284 U.S. 299, 304 (1932).  However, the

Blockburger rule is inapplicable when multiple convictions arise under the same

statute.  See Sanabria v. United States, 437 U.S. 54, 69−70 (1978) (establishing

that when a legislative body defines a statutory offense by prescription of the

"allowable unit of prosecution," that prescription then determines the scope of the

protection afforded by a prior conviction or acquittal and whether a course of

conduct involves one or more distinct "offenses" under the statute); United States

v. Evans, 854 F.2d 56, 59 (5th Cir. 1988) ("When a single statutory provision is

violated, the relevant inquiry is '[w]hat [the legislature] has made the allowable

unit of prosecution.'").  Where multiple convictions are imposed pursuant to a

single statute, the Court must determine the allowable unit of prosecution for that

particular statute in order to know whether or not a double jeopardy violation

exists.  Id.

      Petitioner was indicted for aggravated sexual assault, aggravated

robbery, and aggravated kidnapping for conduct that occurred on December 14,

2005.  (Dkt. # 13-17 at 8−11.)  Counts 1 through 4 of the indictment were for

various forms of aggravated sexual assault of an adult woman.  (Id.)  Count 5

charged Petitioner with aggravated robbery and Count 6 with aggravated

kidnapping.  (Id.)   On February 28, 2008, a jury found Petitioner guilty of all

counts as charged. (Dkt. # 13-18 at 96−103.)  On June 10, 2015, the Texas Court of

Criminal Appeals vacated the conviction on Count 2 for aggravated sexual assault,

finding that this violated the double jeopardy clause.  Ex parte Hamilton, No. WR-

80,458-01, 2015 WL 1341467, at * 1 (Tex. Crim. App. 2015).  That court

explained that "[petitioner] was convicted of both intentionally and knowingly

causing the penetration of the complainant's sexual organ by his sexual organ, and

intentionally and knowingly causing the complainant's sexual organ to contact his

sexual organ." Id.

A. Blockburger Analysis

Petitioner contends that his conviction for aggravated sexual assault,

aggravated robbery, and aggravated kidnapping violate the Double Jeopardy

Clause because all three offenses "fall under 'one unit of prosecution' and in Texas

that is each victim."  (Dkt. # 42 at 5.)  As explained above, the "allowable unit of

prosecution" test is only applicable where a defendant is convicted of multiple

offenses under the same statute.  Here, since Petitioner argues that his convictions

under three separate statutes violate the Double Jeopardy Clause, the Court must

apply the test outlined in <u>Blockburger</u> and its progeny.  <u>Blockburger v.</u>, 284 U.S. at 304.

"The same-elements test . . . inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecutions." <u>Milner v. Johnson</u>, 210 F.3d 368, 368 (5th Cir. 2000) (quoting <u>United States v. Dixon</u>, 509 U.S. 688, 696 (1993)).  In this case, Petitioner was convicted under three separate chapters of the Texas Penal Code: § 29.03 (aggravated robbery), § 20.04 (aggravated kidnapping); and § 22.01 (aggravated sexual assault).  Each of these separate offenses requires proof of an element not contained in the others.  Aggravated robbery requires proof of obtaining property, aggravated kidnapping requires proof of abduction, and aggravated sexual assault requires proof of penetration of a sexual organ.  Accordingly, Petitioner's conviction for these three separate offenses did not violate the Double Jeopardy Clause.  Therefore, the determination of the state courts that Petitioner was not subjected to Double Jeopardy is not contrary to, and did not involve an unreasonable application of clearly established federal law.

   B.   <u>Allowable Unit of Prosecution Analysis for Three Counts of Aggravated Sexual Assault</u>

Petitioner next contends that his conviction on three separate counts of aggravated sexual assault violated the Double Jeopardy Clause because he believes

the allowable unit of prosecution for this offense is each victim.[5]  The law

indicates otherwise.

Petitioner was charged and convicted on three counts for aggravated

sexual assault under the same statute for three discrete acts: intentionally causing

his sexual organ to enter the victim's sexual organ, intentionally causing the

penetration of the victim's sexual organ by his finger, and intentionally causing the

penetration of the victim's anus with his finger.  (Dkt. # 13-17 at 8−11.)   Since the

conviction on these three counts arises out of the same statute, whether or not a

double jeopardy violation occurred depends on the allowable unit of prosecution

for that statute as intended by the Texas legislature.  Evans, 854 F.2d at 59.  The

relevant statute provides:

> (a) A person commits an offense:
>
> > (1) if the person:
> >
> > > (A) intentionally or knowingly:

---

[5] Petitioner is correct to point out that under Texas law the allowable unit of prosecution for robbery and assault is each victim.  See Ex parte Hawkins, 6 S.W.3d 554, 560 (Tex. Crim.  App. 1999).  This means that if a defendant robs a person by taking a wallet and iPhone, double jeopardy prohibits the state from charging him with two counts of robbery: count 1 for stealing the wallet and count 2 for stealing the iPhone.  Instead, because the defendant robbed only one victim, he can only be charged once for robbery.  This is not the case here.  Petitioner was charged once for robbery (there was only one victim), charged once for kidnapping (a separate offense), and charged four times for sexual assault (where the allowable unit of prosecution is each discrete act, not each victim).

> (i)    causes the penetration of the anus or sexual organ of another person by any means, without that person's consent;
>
> (ii)    causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or
>
> (iii)    causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another, including the actor.

Tex. Penal Code § 22.021.

Texas state courts and federal district courts are unanimous in concluding that the allowable unit of prosecution for aggravated sexual assault under Texas Penal Code § 22.021 is for each discrete act, and not for each victim as Petitioner would prefer.  Gonzales v. State, 304 S.W.3d 838, 849 (Tex. Crim. App 2010) (holding there was no Double Jeopardy violation where a defendant was charged with two counts of aggravated sexual assault under the same statute because penetration of the anus and penetration of the sexual organ are two discrete acts); Vick v. State, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) ("Sec. 22.021 is a conduct-oriented statute; it uses the conjunctive 'or' to distinguish and separate different conduct; and its various sections specifically define sexual conduct in ways that usually require different and distinct acts to commit.  These considerations lead us to conclude that the Legislature intended that each separately described conduct constitutes a separate statutory offense."); Cyphers v.

14

Director, TDCJ-CID, No. 6:10-CV-429, 2011 WL 1980256, at *6 (E.D. Tex. Feb. 23, 2011) (holding on habeas review that Double Jeopardy was not violated where petitioner was convicted on three separate counts of aggravated sexual assault arising out of a single event).  Section 22.01 criminalizes many types of sexually assaultive conduct and uses the conjunction "or" throughout the statute's language. Further, each section of the statute contemplates different and separate acts to commit the various, prohibited conduct.  For example, Section 22.01(a)(1)(A)(i) criminalizes the discrete act of "intentionally caus[ing] penetration of the anus or sexual organ of another person by any means"[6] and Section 22.01(a)(1)(A)(iii) criminalizes the separate discrete act of "intentionally caus[ing] the sexual organ of another person to contact or penetrate the mouth, anus, or sexual organ of another person."  This specificity reflects the legislature's intent to separately and distinctly criminalize any act which constitutes the prohibited conduct.  See Vick, 991 S.W.2d at 833.  This conclusion also comports with the Texas Court of Appeals' decision to vacate Count 2 on double jeopardy grounds.  Ex parte Hamilton, 2015 WL 1341467 at 1.  Count 1 charged Petitioner with penetrating the victim's sexual organ with his sexual organ, and Count 2 charged Petitioner with contacting the victim's sexual organ with his sexual organ; penetration and contact arose out of the same discrete act and therefore violated the allowable unit of prosecution.

---

[6] Like with Petitioner's finger.

Accordingly, the determination of the state courts that Petitioner was not subject to Double Jeopardy for his conviction for three counts of aggravated sexual assault is not contrary to, and did not involve an unreasonable application of, clearly established federal law.

## IV.   Ineffective Assistance of Counsel: Double Jeopardy

Petitioner contends that he received ineffective assistance of counsel because his appellate counsel failed to bring forth double jeopardy claims on direct appeal.  (Dkt. # 1 at 9; Dkt. # 42 at 6.)  In the instant motion, Petitioner simply rehashes his arguments previously made.  Rule 59 motions are not the proper procedural device to raise old arguments and Petitioner cites no law to indicate that the Court's conclusion was a manifest error of law or fact.  Further, the state court did find ineffective assistance of counsel pertaining to double jeopardy.  (See Dkt. # 14-44 at 165, 169.)  To the extent that the state court has already ruled in Petitioner's favor, there is nothing for this Court to review.  Finally, in light of this Court's determination that no double jeopardy violation occurred, counsel could not have provided ineffective assistance because there was no double jeopardy violation.

## V.   Ineffective Assistance of Counsel: Fourth Amendment

Petitioner asserts that his trial counsel rendered ineffective assistance of counsel by failing to properly argue a motion to suppress evidence arising out of

a police stop and search.  (Dkt. # 8.)  Specifically, Petitioner argues that his

counsel was ineffective by only arguing that an inventory search was improper and

failing to argue that the initial stop itself was unconstitutional.  (Id.)  On February

26, 2008, the trial court conducted a hearing on a motion to suppress evidence

obtained during an inventory search of Petitioner's vehicle.  (Dkt. # 14-24.)  The

trial court denied Petitioner's motion to suppress and on direct appeal the Texas

Court of Appeals affirmed that the inventory search was proper.  Hamilton, 300

S.W.3d at 16−17.  The state habeas court found that Petitioner's ineffective

assistance of counsel "claims are without merit and that their representation of

[Petitioner] did not fall below an objective standard of reasonableness."  (Dkt.

# 14-44 at 165.)

>      The facts are undisputed.  On December 16, 2005, police officer

George Johnston was on patrol.  ("Mot. to Suppress Tr.," Dkt. # 14-24 at 6:2−6:6.)

At 12:42 p.m., Officer Johnston observed a vehicle parked in a desolate area,

formerly known as "the cliffs or the devil's den" near Kyle-Seale Parkway in

Bexar County, Texas.  (Id. at 7:4−7:11.)  Officer Johnston described the area as

one with a nice view and where people would go to eat lunch.  (Id.)

Approximately an hour later, Officer Johnston observed the same vehicle in the

same position, which he thought was unusual, given his familiarity with the setting.

(Id. at 7:21−7:25.)  Officer Johnston decided to investigate, pulled up behind the

17

vehicle, activated his emergency lights, and went to see if the driver had fallen asleep, which was common according to the officer.  (Id. at 8:1−8:5.)  Officer Johnston observed Petitioner lying on his side while reclined in the driver's seat appearing to be asleep.  (Id. at 8:8−8:14.)  Officer Johnston knocked on the window twice, but Petitioner did not respond.  (Mot. to Suppress Tr. at 8:17−8:24.)  Officer Johnston then opened the door and shook Petitioner, but he did not respond.  (Id.)  The officer then performed a sternum rub further resulting in no response.  (Id.)  At this point, Officer Johnston called for a medical response team.  (Id.)  After the medical team took Petitioner to the hospital, police conducted an inventory search and found evidence directly linking Petitioner to the rape for which he was ultimately convicted.

To successfully state a claim for ineffective assistance of counsel, one must generally demonstrate: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced his defense.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the Strickland test requires a finding that counsel's performance was constitutionally effective.  Id. at 696.  To prove deficient performance, Petitioner must show that his counsel's actions "fell below an objective standard of reasonableness."  Pratt v. Cain, 142 F.3d 226, 231 (5th Cir. 1998) (quoting Strickland, 466 U.S. at 688).  "Our scrutiny of counsel's performance is highly deferential, and we must make every effort to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time". Pitts v. Anderson, 122 F.3d 275, 279 (5th Cir. 1997). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997). Further "there is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" Harrington, 562 U.S. at 109 (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003)).

At the hearing on the motion to suppress, Petitioner's attorney argued that the subsequent inventory search was illegally performed, but did not argue that Officer Johnston's initial approach of the vehicle was an unconstitutional seizure, as Petitioner now would have preferred. The Supreme Court has held that "there is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington, 562 U.S. at 109. Petitioner presents no facts or case law to overcome this presumption. It is likely that Officer Johnston's initial actions fell within a community caretaking exception to the Fourth Amendment and were objectively reasonable. See Cady v. Dombrowski, 413 U.S. 433, 447−48 (1973) (explaining that local police

commonly come into contact with people and automobiles and "frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from [criminal investigations]").

Further, even if Officer Johnston's initial stop did violate the Fourth Amendment, Petitioner was not prejudiced because the evidence in the vehicle would have been inevitably discovered and ultimately admissible at trial.[7]  Such realities support the lawyer's tactical decision to only argue the inventory search theory at the motion to suppress.  The state court found Petitioner's ineffective assistance to counsel claims to be without merit and, for the reasons mentioned above, this Court finds that the state court determination was neither contrary to, nor an unreasonable application of federal law because it is likely Petitioner's lawyer made a well-informed and conscious decision to only argue the inventory search theory.

---

[7] The testimony at the motion to suppress hearing establishes that Petitioner left a suicide note and was passed out in his vehicle presumably from a suicide attempt. As is the case, the contents of the vehicle would have been inevitably discovered and admissible at trial.  Nix v. Williams, 467 U.S. 431, 434−444 (1984).

Conclusion

For the aforementioned reasons, the Court **DENIES** Petitioner's

Motion to Alter or Amend Judgment (Dkt. # 42).

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, May 2, 2016.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE